Tyler B. Ayres, Bar No. 9200
AYRES LAW FIRM
12339 S. 800 E. Ste. 101
Draper UT 84020
(801) 255-5555
Tyler@AyresLawFirm.com
Attorneys for Plaintiff and Class

---

## IN THE UNITED STATES DISTRICT COURT
## STATE OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| Connie Holmes, <br><br>     On behalf of Plaintiff and Class, <br><br> vs. <br><br> Crown Asset Management, LLC, <br><br>     Defendant. | **COMPLAINT** <br> **JURY TRIAL DEMANDED** <br><br> Case No: <br><br> Judge: |

Connie Holmes (Holmes), by and through her attorney, for her Complaint against Defendant, Crown Asset Management, LLC, (Crown Asset), demands a jury trial and complains of Defendant as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 over Plaintiffs' cause of action arising under the Fair Debt Collection Practices Act and pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. This Court has supplemental jurisdiction over Plaintiffs' causes of action arising under the Utah state law pursuant to 28 U.S.C. § 1367.

2.  Venue lies in the United States District Court for the District of Utah because the events and omissions giving rise to Plaintiffs' claims occurred in the State of Utah. 28 U.S.C. § 1391(b)(2).

3.  Defendant is subject to personal jurisdiction within this district because Defendant regularly transacts business within the State of Utah.

## PARTIES

4.  Plaintiff Holmes is an individual who resides in the State of Utah.

5.  Upon information and belief, Defendant Crown Asset is a Georgia limited liability company with its principal office located at 3100 Breckinridge Blvd, Ste 725, Duluth, GA 30096. Crown Asset regularly transacts business within the State of Utah.

6.  Crown Asset's business is to acquire debts in default and then pursue collection of the debts, directly or indirectly, through instrumentalities of interstate commerce or the mails. Any debt of Holmes that Crown Asset alleges it acquired was in default when Crown Asset acquired it.

7.  Crown Asset is a "debt collector" as defined by the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a (6).

8.  None of the exceptions to the term "debt collector" under the FDCPA apply to Crown Asset.

## GENERAL ALLEGATIONS

9.  This case has to do with the prosecution of bogus debt collection actions by Crown Asset when it did not have the right to engage in the business of debt collection in the State of Utah. In furtherance of its debt collection business, Crown Asset improperly filed actions before courts in Utah to obtain judgments against Plaintiff and Plaintiff Class members (defined in ¶¶ 42-50 below). Crown Asset achieved its goal through the use of high volume, repeat cases

which have clogged the courts and to obtain its bogus judgments through the use of non-compliance with Utah laws regulating debt collection. By using the court system for its improper purposes, Crown Asset has violated the Fair Debt Collection Practices Act (FDCPA) and have been unjustly enriched and permitted to engage in the business of debt collection in Utah when it was not licensed to do so.

10. By filing lawsuits in the State of Utah without first acquiring the necessary license for debt collection, Crown Asset engaged in "action that cannot be legally taken" in violation of the FDCPA.

11. By filing lawsuits in the State of Utah without first acquiring the necessary license for debt collection, Crown Asset engaged in a deceptive and unconscionable practice in violation of the Utah Consumer Sales Practices Act (UCSPA).

12. The judgments improperly obtained by Crown Asset in Utah are void because Crown Asset lacked standing in Utah to collect those debts before it obtained the mandatory license required by Utah law. Without the mandatory license it was not legally entitled to payment on the notes and had suffered no protectable injury which was required for it to obtain the jurisdiction of the state courts. The failure to object to the lack of standing by the Plaintiff class members who either defaulted or consented to judgment does not impact this rule. Parties cannot confer subject matter jurisdiction by consent, waiver or estoppel.

13. In a related matter before the U.S. District Court of Maryland involving the Defendant, *Hauk v. LVNV Funding, LLC*, 749 F. Supp. 2d 358, 369 (D. Md. 2010), the Honorable Catherine C. Blake found that the Plaintiffs in that action, who are not Class members, were permitted to pursue claims against LVNV under federal and state law "when it filed complaints in Maryland state court against…the putative class members [when]…LVNV had failed to

become licensed as a "collection agency" by the Maryland Commissioner of Financial Regulation prior to filing the lawsuits, as required by Maryland law, Md. Code Ann., Bus. Reg. § 7–301."

14. Plaintiff alleges that part of the injury sustained by her and the Plaintiff class members as a result of the state court judgments obtained by Crown Asset against them included the assessment of a purported debt sum, interest, and costs (including attorney fees) against them. The damage arose from the existence of the judgments reflecting a judgment that was void and/or the enforcement of the judgments by garnishment, or payments collected through threat based on the judgments, which caused, actually and proximately, the injury for which the Plaintiff seeks redress.

**The Proliferation of Debt Collection Irregularities**

15. This case arises from a systematic, intentional, and predatory debt collection business of Defendant Crown Asset against vulnerable Utah consumers without the mandatory license required by the State of Utah.

16. Defendant Crown Asset allegedly acquires consumer debts in default for pennies on the dollar and then engages in the business of debt collection including trying to collect the debt by filing lawsuits before Utah courts when it did not have the legal authority to engage in the business of debt collection in the State of Utah. Crown Asset continues to operate without a license thus (i) skirting the requirements easily complied with by other similarly situated companies engaged in the business of debt collection in Utah, which provided Crown Asset an improper advantage over those who followed the law and (ii) avoiding the mandatory protections intended for Utah consumers by the legislature and regulatory authority.

17. The non-partisan Government Accounting Office (GAO) recently summarized

public enforcement of this kind of scheme as follows:

our analysis of information provided by the National Association of Attorneys General found at least 60 enforcement actions were taken by state attorneys general against debt collection companies from January 2006 through May 2009, of which 28 involved or may have involved the collection of credit card debt. These actions alleged a variety of illegal debt collection practices, such as deducting money from consumers' bank accounts without authorization, **operating in states without proper licenses**, and refusing or failing to provide consumers with proof of their debts. Generally, state attorneys general either negotiated a settlement with the debt collection company or brought a court action against the company. Settlements included penalties such as refunds to consumers, cancellation of consumers' debts, civil penalties, and injunctive relief aimed at preventing future collection violations.

GAO Report, Fair Debt Collection Practices Act Could Better Reflect the Evolving Debt Collection    Marketplace and Use of Technology, September 2009 (available at http://www.gao.gov/new.items/d09748.pdf) at Pages 38-39 (emphasis added).

18. Crown Asset was a "collection agency" as defined by Title 12 Collection Agencies.

Crown Asset directly participated in collection efforts by filing lawsuits, providing

documents relating to the lawsuits and otherwise acting through its authorized agents to

collect consumer debts.

**Utah's Licensing Requirements for a Debt Collector License**

*19.* Utah Code Ann. 12-1-1 provides:

*No person shall conduct a collection agency, collection bureau, or collection office in this state*, or engage in this state in the business of soliciting the right to collect or receive payment for another of any account, bill, or other indebtedness, or advertise for or solicit in print the right to collect or receive payment for another of any account, bill, or other indebtedness, *unless at the time of conducting the collection agency*, collection bureau, collection office, or collection business, or of advertising or soliciting, *that person or the person for whom he may be acting as agent, is registered with the Division of Corporations and Commercial Code and has on file a good and sufficient bond as hereinafter specified.*

(Emphasis added)

20. However, Crown Asset does not have the mandatory license required by Utah law but

continued its business of collecting dates acquired in default and filed collection lawsuits

in Utah courts without the right to do so.

21. According to public records, Crown Asset engaged directly in collection activities in more than 300 occurrences in the State of Utah during the class period by taking actions, in the form of collection lawsuits, to collect debts from Plaintiffs Class members.  In these lawsuits Crown Asset actively and directly participates by acting as the named party in the litigation and providing purported affidavits and other papers in support of the complaint to the state courts.

**Facts Related to Plaintiff Holmes**

22. Without the legal right or Collection Agency license to do so, on October 10, 2018, Crown Asset continued its business of collecting debts when it filed a consumer debt collection action in the Third Judicial District Court of Utah, Salt Lake Division against Holmes styled as *Crown Asset Management, LLC v. Holmes, Connie*, Case No. 189917966 ("Holmes Action").

23. At the time of filing of the Holmes Action, Crown Asset did not have a license as a Collection Agency as required under Utah law.

24. In the Holmes Action the District Court of Utah did not determine if it in fact had jurisdiction over the parties or whether Crown Asset had any right to file the debt collection action.

25. Crown Asset brought the action based on a debt that it had purchased from a credit card provider.

26. Holmes submitted an answer challenging the validity of the debt.

27. The parties submitted a "Verified Stipulation for Entry of Judgment", wherein Holmes indicated she signed the stipulation "under protest" because she "felt [the attorney for Crown Asset] tricked me into this agreement".

28. Crown Asset obtained a judgment of $987.24 on February 6, 2019.

29. Holmes has been paying Crown Asset $50 a month towards the judgment.

**FIRST CLAIM FOR RELIEF**
*Violation of the FDCPA*
*Individual and Class Claim*

30. Plaintiff incorporates by reference all preceding paragraphs.

31. Defendant engaged in unfair and deceptive acts and practices in violation of 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(10) and 1692f, by engaging in an action that cannot legally be taken where Crown Asset pursues debt collection via filing lawsuits in Utah without the necessary Collection license .

32. Section 1692e provides:

**§1692 e.      False or Misleading representations [Section 807 of P.L.]**

**A debt collector may not use any false, deceptive, or misleading representations or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:…**

**(2) The false representation of—**

**(A) The character, amount, or legal status of any debt;…**

**(5) The threat to take any action that cannot legally be taken or that is not intended to be taken…**

**(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer…**

33.   Section 1692f provides:

**§ 1692f.      Unfair practices [Section 808 of P.L.]**

**A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt…**

## SECOND CLAIM FOR RELIEF
### *Violation of the Utah Consumer Sales Practice Act*
### *Individual and Class Claim*

34. Plaintiff incorporates by reference all preceding paragraphs.

35. The Utah Consumer Sales Practices Act is to be construed liberally to protect consumers from suppliers who commit deceptive and unconscionable sales practices and to protect suppliers who in good faith comply with the provisions of this act. UTA § 13-11-2(2) and (6).

36. Defendant Crown Asset's practice of collecting debts without a license as required in Utah is a deceptive and unconscionable practice designed to take advantage of consumers who may not know that Crown Asset has not acquired the proper license to collect debts in Utah. Defendant did not disclose that it did not have the requisite license when it filed suit against Utah consumers in an attempt to collect on purchased debts.

37. Defendant Crown Asset also received an unfair advantage over other suppliers who follow the law and either go to the cost and expense of attaining compliance with Utah's laws or do not collect debts in Utah.

38. Defendant Crown Asset purposefully engaged in these activities knowingly and intentionally to harm consumers and gain an advantage over its competitors.

39. Plaintiff seeks a declaration on behalf of Plaintiff class members, that since Defendant Crown Asset was acting unlawfully as an unlicensed collection agency, Crown Asset: (i) did not have legal standing to pursue recovery on assigned debts through litigation; (ii) did not have legal standing to obtain any judgment in Utah Courts against Plaintiff's Class Members and those judgments should be declared (a) void and unenforceable and (b) Crown Asset should not be entitled to collect any sums on those judgments or debts related

to the Plaintiff Class members.

40. Defendant Crown Asset should be ordered to disgorge all sums collected on a judgment amounts from the Plaintiff Class member's amounts that Crown Asset obtained as a result of the judgments entered improperly against the Plaintiff Class Members while it acted illegally as a collection agency without a license.

41. Defendant should be enjoined from attempting to collect any judgment amounts entered improperly against the Plaintiff Class Members in its favor, while it acted illegally as a collection agency without a license.

42. Alternatively a declaration that the Defendant Crown Asset is not entitled to the assistance of any Utah court to enforce the principal amount due under any judgment Crown Asset obtained improperly.

43. Holmes is further entitled to statutory damages of $2,000 or her actual damages (whichever is greater) under the Utah Consumer Sales Practice Act.

44. Holmes has suffered emotional distress as a result of the litigation pursued by Defendant.

45. Defendant's litigation has caused Holmes anxiety and distress that has resulted in physical manifestations.

## CLASS ALLEGATIONS

46. Plaintiff brings this claim on behalf of two classes pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

47. The "FDCPA Class" consists of (a) all individuals in Utah (b) against whom Crown Asset (c) filed a lawsuit seeking to collect a debt (d) which litigation was commenced in the (1) year period immediately preceding the filing of this complaint.

48. The "Utah Class" consists of (a) all individuals in Utah (b) against whom Crown Asset (c) filed a lawsuit seeking to collect a debt (e) which litigation was commenced in the (4) year period immediately preceding the filing of this complaint.

49. On information and belief, the classes are so numerous that joinder of all members in not practicable. The information relating to the precise number of persons who fall within the respective classes is within the control of the Defendant.

50. There are questions of law and fact common to the members of each class, which common questions predominate over any questions relating to individual class members. The predominant common questions are (a) whether Defendant could lawfully pursue litigation in Utah without the necessary collection license; (b) whether pursuing litigation in an effort to collect a debt without the necessary collection license constitutes a violation of the FDCPA; and (c) whether such practices violate the Utah Consumer Sales Practices Act.

51. Plaintiff's claim is typical of the claims of the respective class members. All are based on the same factual and legal theories.

52. Plaintiff will fairly and adequately represent the members of each class. Plaintiff has retained counsel experienced in consumer class actions and FDCPA litigation.

53. A declaration of law and injunctive relief is appropriate for the members of the Utah Class.

54. A class action is superior for the fair and efficient adjudication of the claims of the FDCPA and Utah class, in that:

    a.  Individual actions are not economically feasible;

    b.  Members of the class are likely to be unaware of their rights;

    c.  Congress intended class actions to be an enforcement mechanism under the FDCPA.

WHEREFORE, the Court should enter judgment in favor of plaintiff and the class members and against Defendant for:

(1) Certify the FDCPA Class and appoint Plaintiff as the class representative and her counsel as class counsel;

(2) Certify the Utah Class and appoint Plaintiff as the class representative and her counsel as class counsel;

(3) Award the FDCPA Class statutory damages and actual damages consisting of any amount collected by the Defendant;

(4) Grant the Utah Class declaratory and injunctive relief against Defendant to stop Defendant from harming consumers and providing them with an unfair advantage over its competitors by engaging in collection efforts without a license; including a preliminary and permanent injunction;

(5) Award Plaintiff her actual or statutory damages in an amount to be determined at trial;

(6) Attorney's fees, litigation expenses, and cost of suit; and

(7) Such other and further relief as the Court deems proper.

DATED: October 15th, 2019.

AYRES LAW FIRM

/s/      Tyler B. Ayres
Attorneys for Plaintiff and Class