IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CONNIE HOLMES and CHRISTINE TREASE, <br><br> Plaintiffs, <br><br> v. <br><br> CROWN ASSET MANAGEMENT, LLC, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER DISMISSING PLAINTIFFS' CLAIMS** <br><br> Case No. 2:19-cv-00758 <br><br> Howard C. Nielson, Jr. <br> United States District Judge |

Plaintiffs Connie Holmes and Christine Trease brought this suit against Defendant Crown Asset Management, LLC, on behalf of themselves and a putative class of similarly situated individuals. Plaintiffs allege that Defendant's attempts to collect debts from Plaintiffs violated the federal Fair Debt Collection Practices Act ("FDCPA") and the Utah Consumer Sales Practice Act. The court grants Defendant's motion to dismiss Plaintiffs' federal claim and declines to exercise supplemental jurisdiction over their state law claim.

**I.**

Defendant sued each Plaintiff in Utah State court to collect debts that Defendant "purchased from a credit card provider." Dkt. No. 43 at 6, 7. Plaintiffs allege that "Crown Asset did not have a license as a Collection Agency as required under Utah law." *Id*. The state court did not in either case "determine if it in fact had jurisdiction over the parties or whether Crown Asset had any right to file the debt collection action[s]." *Id.*

Plaintiffs then filed this lawsuit, alleging that Defendant violated the FDCPA by "pursu[ing] debt collection via filing lawsuits in Utah without the necessary Collection license." *Id.* at 8–9. They also alleged that these actions violated the Utah Consumer Sales Practice Act. *See id.* at 9–10. Defendant subsequently moved to dismiss the amended complaint. *See* Dkt. No. 57. In a docket text order issued shortly before its hearing on the motion to dismiss, the court ordered that "the parties shall be prepared to address whether Defendant's conduct in suing the Plaintiffs is protected under the Petition Clause of the First Amendment." Dkt. No. 69. After addressing this issue at the hearing, the parties were allowed to file supplemental briefing. *See* Dkt. Nos. 71–73.

## II.

The court first addresses Plaintiffs' claim that Defendant violated the FDCPA by engaging in debt collection without the license required by Utah law. The court concludes that this claim fails because Defendant's actions were protected by Petition Clause immunity, which generally protects individuals and entities from liability for petitioning the government— including by bringing suit in court—for redress of grievances.

### A.

Among its other guarantees, the First Amendment provides that "Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances." U.S. CONST. amend. I. "The Supreme Court has recognized this right to petition as one of the most precious of the liberties safeguarded by the Bill of Rights." *CSMN Investments, LLC v. Cordillera Metropolitan District*, 956 F.3d 1276, 1282 (10th Cir. 2020) (cleaned up).

The Supreme Court has frequently discussed the Petition Clause in the course of interpreting the reach of the Sherman Act. In *Eastern R.R. Presidents Conference v. Noerr Motor*

*Freight, Inc.*, the Court, declining to "lightly impute to Congress an intent to invade [the] freedoms" provided by the First Amendment "right of petition," construed the Sherman Act to "not prohibit two or more persons from associating together in an attempt to persuade the legislature or the executive to take particular action with respect to a law that would produce a restraint or a monopoly." 365 U.S. 127, 136, 138 (1961). In *United Mine Workers of America v. Pennington*, the Supreme Court confirmed that "[j]oint efforts to influence public officials do not violate the antitrust laws even though intended to eliminate competition," and it made clear that "[s]uch conduct is not illegal" even when "part of a broader scheme itself violative of the Sherman Act." 381 U.S. 657, 670 (1965). The construction of the Sherman Act first set forth by the Court in these two cases has come to be called the *Noerr-Pennington* doctrine.

In *California Motor Transport Co. v. Trucking Unlimited*, the Court extended this doctrine, holding that "[t]he same philosophy governs the approach of citizens or groups of them to administrative agencies (which are both creatures of the legislature, and arms of the executive) and to courts, the third branch of Government." 404 U.S. 508, 510 (1972). In reaching this conclusion, the Court relied on the propositions that "[c]ertainly the right to petition extends to all departments of the Government" and that "[t]he right of access to the courts is indeed but one aspect of the right of petition." *Id*; *see also id.* at 513 (explaining that this "right, as indicated, is part of the right of petition protected by the First Amendment").

The Supreme Court has taken essentially the same approach in construing the National Labor Relations Act. "[S]ensitive" to "the First Amendment right to petition the Government for redress of grievances," the Court held in *Bill Johnson's Restaurants, Inc. v. NLRB* that "[t]he filing and prosecution of a well-founded lawsuit may not be enjoined as an unfair labor practice, even if it would not have been commenced but for the plaintiff's desire to retaliate against the

defendant for exercising rights protected by the Act." 461 U.S. 731, 741, 743 (1983). And in *BE & K Construction Co. v. NLRB*, the Court, after "recognizing the right to petition as one of the most precious of the liberties safeguarded by the Bill of Rights," held that the National Labor Relations Act did not authorize monetary sanctions against an employer for filing a reasonably based lawsuit, even if that lawsuit proved unsuccessful, and even if it was filed for a retaliatory purpose. 536 U.S. 516, 524–25, 536 (2002) (cleaned up).

The Tenth Circuit has held that the same principles apply generally and are not limited to the antitrust or labor law context. *See CSMN Investments*, 956 F.3d at 1283. Outside the antitrust context, the Tenth Circuit refers to these principles as "Petition Clause immunity, reserving the name, *Noerr-Pennington*, for antitrust cases." *Id.* As the court has previously recognized, in *CSMN*, the Tenth Circuit "made clear what the Supreme Court cases strongly imply—that the immunity applies not merely as a rule of statutory construction, but as a matter of constitutional law." *See Reyes v. N.A.R. Inc.,* No. 1:20-cv-00007-HCN, ___ F. Supp. 3d ____, 2021 WL 2660066 *3 (D. Utah June 29, 2021). As the Tenth Circuit made clear, "[t]he First Amendment guarantees the people a right 'to petition the Government for a redress of grievances.'" *CSMN Investments*, 956 F.3d at 1278. "Immunity flows from this right, protecting those who seek redress through the courts from liability for petitioning activities." *Id*. at 1282. The Petition Clause thus "immunizes litigants from liability for their petitioning activities, unless the petitioning is a sham." *Id*. at 1278.

To determine whether a petition is a sham, the 10th Circuit "provides a two-step approach: (1) is the petitioning objectively reasonable? (2) and only if not, what is the subjective intent behind the petitioning?" *Id.* at 1283–84. A lawsuit is objectively reasonable unless "no

4

reasonable litigant could realistically expect success on the merits." *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 50 (1993).

Although some courts have suggested that the Petition Clause does not apply to FDCPA claims, *see, e.g.*, *Hartman v. Great Seneca Financial Corp.*, 569 F.3d 606, 615 (6th Cir. 2009), this court disagrees. First, a necessary premise of this suggestion is that Petition Clause immunity applies only as a matter of statutory construction. But as discussed, the Supreme Court's cases strongly imply—and the Tenth Circuit has squarely held—that this immunity applies as a matter of constitutional right. Second, as the court has previously recognized, the Supreme Court cases on which these other courts rely did not address Petition Clause immunity and nothing in their analysis suggests that the FDCPA eliminates this immunity. *See Reyes*, 2021 WL 2660066 at *4–5 (discussing *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573 (2010), and *Heintz v. Jenkins*, 514 U.S. 291 (1995)). Finally, because Petition Clause immunity is not absolute—as discussed, it does not protect sham petitions—it is foreclosed neither by the actual holding of *Heintz*, which rejected only the categorical proposition that the act never applies to lawyers in litigation, nor the actual holding of *Jerman*, which held only that the FDCPA's bona fide error defense does not apply to legal errors. *See id.*

**B**.

The court has little difficulty concluding that a lawsuit to recover a debt is a petition for redress of grievances within the meaning of Petition Clause immunity. It follows that Defendant cannot be held liable under the FDCPA for seeking to recover debts through the state courts unless its lawsuits constituted sham petitions.

Plaintiffs allege that Defendant violated the provisions of the FDCPA prohibiting debt collectors from using "any false, deceptive, or misleading representation or means in connection

5

with the collection of any debt" including "[t]he threat to take any action that cannot legally be taken" and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt." 15 U.S.C. § 1692e. Plaintiffs also allege that Defendant violated Section 1692f of the FDCPA, which prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt." Plaintiffs argue that Defendant violated these provisions because it "fail[ed] to register in accordance with the" Utah Collection Agency Act ("UCAA"), and "file[d] lawsuits against consumers without the necessary license." Dkt. No. 58 at 7, 13. Plaintiffs' claim is based solely on the state court lawsuits—they do not allege that Defendant took any other action that violated the FDCPA.

The court concludes that Defendant's lawsuits were protected by the Petition Clause and thus did not violate the FDCPA. As an initial matter, Defendant prevailed in its lawsuits against the Plaintiffs. *See* Dkt. No. 43 at 6; Utah State court case number 209700017. "A winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a sham." *Professional Real Estate Investors, Inc.*, 508 U.S. at 60 n.5.

Even had Defendant not prevailed, moreover, the court would still conclude that Defendant's lawsuits were not sham petitions and were thus protected by the Petition Clause because Defendant could have reasonably believed that it was not required to register under the UCAA in order to file a lawsuit to collect a debt. The UCAA provides that

> No person shall conduct a collection agency, collection bureau, or collection office in this state, or engage in this state in the business of soliciting the right to collect or receive payment for another of any account, bill, or other indebtedness, or advertise for or solicit in print the right to collect or receive payment for another of any account, bill, or other indebtedness, unless at the time of conducting the collection agency, collection bureau, collection office, or collection business, or of advertising or soliciting, that person or the person for whom he may be acting as agent, is registered with the Division of Corporations and Commercial Code and has on file a good and sufficient bond as hereinafter specified.

6

Utah Code § 12-1-1. Defendant could have violated this statute only if by bringing suit in Utah it was "conduct[ing] a collection agency, collection bureau, or collection office in this state." That is because the other activities covered by this statute all "unambiguously apply only where a person solicits or advertises the right to collect payment *for another*," and Defendant "pursues only previously defaulted debts that it has purchased and therefore owns." *Lawrence v. First Financial Investment Fund V, LLC*, 444 F. Supp. 3d 1313, 1320 (D. Utah 2020).

The UCAA does not define what a "collection agency," "collection bureau," or "collection office" is. Based on the fact that the other covered activities enumerated in the statute involve collecting payments for others, and given that the statute appears to refer to the "business of soliciting the right to collect or receive payment for another of any account, bill, or other indebtedness" as the "collection business," the court concludes that Defendant could have reasonably believed that it was not a collection agency, bureau, or office because it collected debts only for itself—not for others. After all, it is well settled under the *noscitur a sociis* canon of construction that doubtful terms or phrases "grouped in a list should be given related meanings." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 195 (1st ed. 2012).

Nor does the statute define what it means to "conduct" a collection agency, bureau, or office in Utah. Although it is undisputed Defendant filed lawsuits in Utah, it is not clear Defendant was "conducting" a collection agency, bureau, or office in Utah because Defendant "is a Georgia limited liability company with its principal office" in Georgia. Dkt. No. 43 ¶ 5. The court concludes that even if Defendant believed it was a collection agency, bureau, or office, it could have reasonably believed that it was not subject to the UCAA registration requirement because its business was based in Georgia, not Utah.

In addition, "Article I, § 11 of the Utah Constitution . . . prescribes that all courts shall be open and persons shall not be barred from using them to redress injuries." *Madsen v. Borthick*, 658 P.2d 627, 629 (Utah 1983). This "provision was intended to place a limitation upon the legislature to prevent that branch of the state government from closing the doors of the courts against any person who has a legal right which is enforceable in accordance with some known remedy." *Puttuck v. Gendron*, 199 P.3d 971, 978 (Ct. App. Utah 2008) (cleaned up). State courts are thus presumed to "retain their grant of constitutional jurisdiction in the absence of a clearly expressed statutory intention to limit jurisdiction." *Labelle v. McKay Dee Hosp. Center*, 89 P.3d 113, 114 (Utah 2004). The UCAA, however, neither expressly states that a party is required to obtain a license in order to sue to collect a debt; defines what it means to "conduct" a collection agency, bureau, or office; nor contains any language that clearly encompasses filing a lawsuit. Absent clearer statutory language, the court concludes that Defendant could have reasonably believed that the UCAA could not properly be construed to limit the open access to courts guaranteed by the Utah Constitution.[1]

To be clear, the court does not decide whether the UCAA in fact required Defendant to obtain a license before suing Plaintiffs in state court. Because Defendant's lawsuits were protected by the Petition Clause, it is enough to conclude that Defendant reasonably could have

---

[1] To be sure, the Utah Supreme Court has held that when "a statute requires that a license be obtained prior to engaging in business or profession, and the license is not merely for the purpose of raising revenue, but is a regulation measure used to protect the public from fraud or incompetence in that particular business or profession, the general rule is that an unlicensed person cannot enforce a contract to recover payment for his services in conducting such a business." *Heber Valley Truck, Inc. v. Utah Coal and Energy, Inc.*, 611 P.2d 389, 391 (Utah 1980). But this rule does not apply here: although Defendant was not licensed as a debt collector, it did not bring suit to recover payment for debt collecting services.

8

believed that a license was not required. And for the reasons discussed, the court does so conclude. The court accordingly dismisses Plaintiffs' FDCPA claim.

## III.

The Tenth Circuit has explained that "[w]hen all federal claims have been dismissed, the court may, and usually should, decline to exercise [supplemental] jurisdiction over any remaining state claims." *Smith v. City of Enid*, 149 F.3d 1151, 1156 (10th Cir. 1998); *see also* 28 U.S.C § 1367(c)(3).

\* \* \*

Defendant's motion to dismiss is **GRANTED IN PART**. Plaintiffs' federal claim is **DISMISSED WITH PREJUDICE**. Plaintiffs' state law claim is **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

DATED this 6th day of August, 2021.

BY THE COURT:

_____

Howard C. Nielson, Jr.
United States District Judge